BRIAN W. BOSCHEE, ESQ.
Nevada Bar No. 07612
Email: bboschee@nevadafirm.com
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
Email: jboyle@nevadafirm.com
HOLLEY DRIGGS
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:  (702) 791-0308

Kevin Murphy (Pro Hac Vice Forthcoming)
Claudio A. Guler (Pro Hac Vice Forthcoming)
WUERSCH & GERING LLP
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
Email: kevin.murphy@wg-law.com
          claudio.guler@wg-law.com

*Attorneys for Plaintiffs Levels Network, Inc. and*
 *AW Beteiligungs GmbH*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LEVELS NETWORK, INC., a Delaware corporation; and AW BETEILIGUNGS GMBH, a limited liability company organized under the laws of Germany, | CASE NO.: |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| v. | **(JURY DEMAND)** |
| JONAS FREY, an individual, | |
| Defendant. | |

Plaintiffs Levels Network, Inc. and AW Beteiligungs GmbH hereby submit this Verified Complaint, supported by the Verifications of Andreas Weishaupt and Alex Rosenzweig attached hereto as Exhibits A and B, respectively, and complain as follows:

1.      Defendant Jonas Frey ("Defendant"), using his position as Chief Executive Officer of each of the Levels companies, including Plaintiff Levels Network, Inc. ("Levels Delaware"), Levels of North America Inc. ("Levels Nevada") and Levels GmbH & Co. KG ("Levels Germany") (collectively, the group of companies will be referred to as "Levels" or the "Levels

14697-01/2644052

- 1 -

Companies"), engaged in extensive self-dealing throughout their life. When the companies became insolvent as a result, he chose to consolidate their assets in Levels Delaware, and then strip Levels Delaware of its intellectual property assets, including, the copyrighted materials complained of herein. His evident aim was to sell or leverage a new position based on those assets. A wide-ranging corporate investigation launched in wake of the insolvency of the Levels Companies revealed Defendant's extensive fraud and self-dealing. Plaintiff AW Beteiligungs GmbH ("AWB") is a German investment company, which Defendant persistently and systematically lied to in order to obtain years of financing for the purpose of funding Defendant's extravagant lifestyle. Having suffered immediate irreparable harm, Plaintiffs request injunctive relief, including the return of Levels Delaware's intellectual properly assets now in the possession of Defendant, and the freezing of $375,000 in assets siphoned out of Levels for Defendant's personal remuneration. Defendant's current and past behavior demonstrates that unless such injunctive relief is granted, Defendant will further attempt to sell, or sell Level Delaware's intellectual property and otherwise secrete his ill-gotten gains from Plaintiffs' reach.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff AW Beteiligungs GmbH is a limited liability company organized under the laws of Germany and maintains its principal place of business at Kernerstrasse 20, 89075 Ulm, Germany.

3.      Plaintiff Levels Network, Inc. is a corporation organized under the laws of Delaware and maintains its principal place of business at 3960 Howard Hughes Parkway, Suite 100, Las Vegas, Nevada 89169.

4.      Defendant Jonas Frey is a citizen of Germany residing at Waldorf Astoria Residences, 3752 Las Vegas Blvd. S, Las Vegas, Nevada.

5.      This is a civil action arising out of Defendant's infringement of a federally-registered copyright, TX-9-006-315, entitled Calling Card – Advertising Service and owned by Levels Delaware. Defendant has converted at least a portion of the subject copyright or is deriving therefrom for his personal use, in violation of at least 17 U.S.C. §§ 106(1), 106(2), 106(3) & 501(a).

6.     This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331, 1338 & 1367(a).

7.     This Court has personal jurisdiction over Defendant by virtue of his residence within this district, his commission of tortious conduct as described herein in this district, his transaction of business within this district and otherwise pursuant to Nev. Rev. Stat. § 14.065(1).

8.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## ALLEGATIONS COMMON TO ALL COUNTS

9.     As noted, AWB is an investment holding company whose sole Managing Director and shareholder is Andreas Weishaupt ("Weishaupt"). AWB was formed on November 17, 2008.

### The Origin of Levels

10.     In Summer and Fall 2016, Defendant, then a resident of Munich, Germany, sought funding from Weishaupt (and ultimately AWB) for a venture called "Levels" that would offer users an integrated "app" solution similar to what the smartphone has accomplished for individuals' communications, shopping, navigation, research and other day-to-day activities. Multiple meetings were conducted between Defendant and AWB. At one such meeting, Defendant represented to AWB that by the end of 2017, the app would be built, launched and soon generate €65 million ($72.4 million[1]) in revenue or more. AWB dismissed Defendant's representation as the hyperbole of an overzealous salesperson. Instead, AWB insisted on developing a proof of concept as a first step.

11.     Defendant returned with two proposals: a model aimed at achieving a proof of concept for €300,000 ($319,148.94) and a model aimed at achieving one for €5 million ($5,319,148.94) with an expanded user base. After some negotiation, AWB committed to the €5 million proof of concept with the expanded user base. AWB did so in the hope that the app might generate a user base that could then be monetized. Given sufficient funding from outside investors, Defendant represented that an integrated app solution could be scaled and that

---

[1] All currency conversion calculations rely on Internal Revenue Service (IRS) yearly-average currency exchange rates (www.irs.gov/individuals/international-taxpayers/yearly-average-currency-exchange-rates).

scalability would be the venture's key to success.

12.     The proof of concept would be built by offering personal and business travelers a "fully booked" experience typically provided exclusively at select resorts, *i.e.*, a custom concierge service (the "Levels Service").  Over time, additional services would be added to the basic proof of concept to allow users to move about their daily routine without having to leave the Levels universe.  This integrated solution would generate efficiency gains, afford users a seamless user experience and reward them with cost savings that they could carry over from one app function to another.  The transferable savings were eventually referred to as "Levels Credits."

13.     The first step would be to form a company. In Germany, companies have minimum capitalization requirements, so Plaintiff agreed to contribute €18,775 ($19,973.40), representing 75.1% of the shares, and Defendant provided the remaining contribution in the amount of €6,225 ($6,622.34), representing 24.9% of the shares.  Defendant insisted on an equity participation for himself as incentive compensation. Defendant used loan proceeds from Weishaupt to fund his contribution (see below).

14.     On July 18, 2016, Levels GmbH was formed as a limited liability company in Germany.  Levels GmbH's principal place of business was Munich. Defendant served as the sole managing director of Levels GmbH. Levels GmbH's formation documents were amended to change the corporate form of the company, after which the company was known as Levels GmbH and Co. KG (together, "Levels Germany").

15.     From January 2017 through December 2017, AWB funded an investment that ultimately amounted to €2.035m (about $2.2m) transferred to Levels Germany.

**Weishaupt Agrees to Loan Defendant Monies to Resolve
Defendant's Tax Issues in Germany**

16.     A prerequisite for the venture was resolving Defendant's existing personal debts in Germany. Absent resolution of those debts, under German law, Defendant stood at significant risk of not being able to continue to act as managing director of Levels Germany. On several occasions in and around October 2016, Defendant represented to Weishaupt, including through Weishaupt's personal tax advisor, that he personally owed approximately €300,000 ($319,149)

to €400,000 ($425,532) to German creditors, including significantly, approximately one quarter thereof to German tax authorities, who, if they enforced their debts against him, could with high probability bar him from serving as managing director of Levels Germany. Defendant cautioned he might actually owe more money to creditors. In fact, Defendant did owe more but concealed this fact from AWB to secure funding from AWB. Weishaupt provided a series of loan advances from October 2016 through December 2017, amounting to a total of €432,016 ($467,782).

17.    Defendant only revealed the true extent of his personal debts over the course of time to Weishaupt. Weishaupt was thus compelled to make loan advances to Defendant time and again, or have to restructure Levels under new executive leadership and risk the loss of his considerable investment through AWB.

18.    Over the course of 2018 to 2019, Defendant returned to Weishaupt almost 20 more times, each time revealing new, vaguely-specified creditors to whom he ostensibly owed debts, and, who, if they were to enforce his debts against him, could with high probability bar him from serving as managing director of Levels Germany. Once Defendant began drawing a salary from Levels Nevada in early 2019, Weishaupt informed Defendant that he would begin to phase out the personal loan advances. By late 2019 / early 2020, Weishaupt's loan advances to Defendant drew down to a trickle and then stopped.

19.    On May 21, 2021, Weishaupt and Defendant entered into a written loan agreement to ratify these and other personal loans and establish a repayment schedule. Defendant defaulted on the repayment schedule on the second repayment date in early August 2021, at which point Weishaupt terminated the loan agreement and declared the full loan amount immediately due and payable. The true extent of Defendant's obligations, over half of which Defendant initially concealed from Weishaupt and AWB, amounted to at least €856,524.91 ($957,861.80).

20.     It is unclear whether Defendant used the proceeds of Weishaupt's loan advances to actually pay his creditors. But through at least the date of the filing of this Complaint, Defendant continues to shirk his duties to his German creditors, which class now includes Weishaupt.

### How Levels Was Expected to Work

21.    Levels would launch based on the Levels Service offered principally to U.S.

customers from a U.S. corporation. The Levels Service would allow users to provide a credit card, and Levels thereafter would book whatever restaurant, hotel or leisure activities the user desired in advance. Users would never have to be presented with a bill to sign during the course of their business or personal travel.

22.    Defendant planned development of software in Germany to support the app, and to develop the principal client base in the United States, with operations based in Las Vegas, Nevada.

**Levels Nevada is Formed**

23.    On March 23, 2017, Defendant caused Levels Nevada to be formed as a Nevada corporation, and funded entirely by intercompany loans from Levels Germany. Defendant selected Jason Reid Martin ("Martin"), a resident of Las Vegas, Nevada, to serve as President and sole director of Levels Nevada. Throughout 2017, Martin was in effective control of Levels Nevada. Defendant and Martin had a falling out in Spring 2018. Thereafter, Martin ceded all control of Levels Nevada to Defendant, and Martin, acting in a ministerial capacity, simply signed documents as "Interim President" that Defendant presented to him and directed him to sign. From Spring 2018 forwards, Martin had no strategic decision-making authority.

**AWB's Funding of Levels Germany**

24.    From 2017 to 2018, Levels Germany hired a staff of software engineers and developed and tested the Levels app, which Levels Germany released to users in Fall 2018. From 2017 onwards, Defendant made numerous requests to AWB to fund Levels Germany further, and in turn, Levels Nevada operations. Defendant repeatedly informed AWB that such funding was necessary to build the "billion dollar business" that was the purpose of the investment.

25.    For example, on December 6, 2017, Defendant requested that AWB fund Levels Germany €300,000 ($325,027). AWB did so. Throughout 2018, Defendant requested AWB fund Levels Germany approximately €3m ($3.537m). Plaintiff provided Levels Germany €2.73m ($3.22m) in 2018. On numerous occasions throughout 2019, Defendant requested further funding from AWB, and AWB provided a further €2.967m ($3.32m) to Levels Germany.

///

14697-01/2644052

26.    By way of further examples, throughout 2020, Defendant requested that AWB fund Levels Germany for operating and other expenses. AWB did so, ultimately providing funding of €2.652m ($3.02m).

27.    Ultimately, by May 2021 when Defendant conceded that the venture had failed (in no small part due to Defendant's self-dealing described further below, which consistently distracted him from advancing the best interests of the venture), AWB had funded Levels Germany approximately €11 million (over $12 million). At least $5,417,909.29 was in turn provided by Levels Germany to fund Levels Nevada.

**Principally Through Levels Nevada, Defendant Spends AWB's Money on Himself and His Wife in Grand Style**

28.    In 2017, Levels Nevada began offering the Levels Service to potential clients. In that year, Defendant was responsible for both persuading hotels and restaurants to accept the Levels Service on behalf of Levels clients, and to persuade clients to register with Levels as potential users of the Levels Service. In March 2017, Defendant caused Levels Nevada to hire his future wife, Katherine Frey (née Schade), to develop the social media presence for Levels Nevada. Katherine Frey's handle on the Levels app was @TheHoneyPot. Defendant's handle, an expression of his passion for Dom Perignon champagne, was @DompiKing.

29.    Levels Nevada started hiring a service staff that ultimately grew to approximately 10 persons to: 1) register clients with Levels, 2) secure credit card information from clients to allow Levels to pay planned bills in advance and 3) make arrangements for clients directly, as a hotel concierge might.

30.    Concealed from AWB and without effective oversight, Defendant began to enjoy a lavish lifestyle in this period at Levels Nevada expense, as he regularly stayed at luxury hotels, dined at expensive restaurants, rented exotic cars and otherwise spent lavishly for his personal benefit. Defendant paid the bills for these expenses using company funds. Defendant never reimbursed Levels Nevada nor Levels Germany. Specifically, with respect to Levels Nevada and his activities in the United States, Defendant funded his expenses either 1) directly with a Levels Nevada debit card linked to the company's Bank of America business checking account, 2)

14697-01/2644052

indirectly with a Marqeta card (see below) or Levels Credits, each of which is ultimately funded by monies originating from Levels Nevada's Bank of America business checking account or 3) a debit card tied to the bank account of Levels Germany.

31.     The basic flow of payments through the Levels platform was as follows: A client would contact Levels, initially through the Levels website and once the app was live, through the Levels app, to book a reservation. Levels would place a hold on the client's credit card for the approximate amount of the reservation through its payment processing services, Vantage Payments, LLC ("Vantage") and Stripe, Inc. ("Stripe"). Next, Levels would contact the vendor, book the reservation and guarantee the client's payment using, initially, the company debit card, and starting in early 2019, a card generated by Marqeta, Inc. ("Marqeta"). Marqeta is an online platform that allows its customers to generate 16-digit credit card numbers for immediate use with third party payments funded by a Marqeta reserve account. Finally, the client would arrive at the venue, enjoy a seamless reservation and at the end, "get-up-and-go" without having to process the bill. The vendor would submit the bill to Levels; Levels would pay the vendor using the company debit card or a Marqeta card; and as a last step, Levels would release its hold on the client's credit card (minus the associated transaction fees) to reimburse itself for the advance.

32.     A pattern developed. Defendant initially characterized all of his expenses as business acquisition (or development) expenses in the companies' accounting records. When confronted by members of his team (but never AWB, because Defendant caused AWB to be kept in the dark), Defendant admitted that these expenses were personal in nature. Defendant spoke often about intending to reimburse Levels Nevada and Levels Germany but never did so.

33.     One luxury hotel where Defendant regularly stayed was the Mandarin Oriental in Munich, Germany to which Defendant caused Levels Germany to pay substantial amounts. Defendant's hotel expenses were unreasonable and unnecessary for the Levels business as Defendant maintained a residence already in central Munich, on Eisenmann Strasse (Street). Causing Levels Germany to undertake this level of expense for Defendant's personal use constituted self-dealing, and was inconsistent with his duty to take care that Levels Germany expended only those sums necessary for the development of its business. On the occasions when

Defendant stayed in Munich, he stayed at the Mandarin Oriental. On multiple occasions, he suggested to AWB that he would only be "stopping for a drink" to meet the food and beverage manager to development business when in fact he stayed for multiple nights, at considerable Levels Germany expense.

34.     By the end of 2017, both Levels Germany and Levels Nevada largely spent money rather than earning money. Levels Germany expended considerable sums developing the Levels app, and paying salaries of its employees and Defendant's salary. In providing the Levels Service, Levels Nevada lost money as credit card transactional expenses were not passed on to clients for reimbursement. For approximately one month, Levels Nevada initiated an upcharge program whereby it charged clients a specified amount for amplified services. As this program began to generate revenue for Levels Nevada, Defendant intervened and discontinued the program in an attempt to loss lead notwithstanding the fact that clients who use amplified services are willing to pay for them.

35.     In 2018, to manage potential revenues and control expenses, AWB insisted on the hiring of a Chief Financial Officer for Levels Germany and Levels Nevada. Defendant complied, and hired Manfred Braun ("Braun"), a professional German accountant, for this purpose. In Braun's review of the financial records of both Levels Germany and Levels Nevada, he ascertained that Defendant spent thousands of dollars on personal expenses rather than expenses related to the development of either company's business operations. Braun raised this issue on numerous occasions with Defendant, who refused to stop expending corporate sums on Defendant's personal expenses, and refused to segregate such expenses so that Levels Nevada could be reimbursed. For example, Defendant repeatedly transferred company funds to and from his personal accounts (see below). During his site visits to Las Vegas, on a number of occasions, Braun observed Defendant withdraw company funds, typically $1,000 to $3,000 per instance, to purchase chips to gamble at a casino, only to return the funds the next day.

36.     Braun brought to Defendant's attention that Defendant purchased €3,697.93 ($4,360.76) in unspecified product at luxury shoe and handbag designer Phillip Plein in Las Vegas, Nevada, €650.04 ($766.55) in merchandise at the luxury Sak's Fifth Avenue store in

Manhattan, and €220.98 ($260.58.) for hair styling for his wife at the luxury Roman K salon in Manhattan. The total value of these personal purchases amounted to €4,568.95 ($5,387.91), for which Defendant had never reimbursed Levels Germany but for which was ultimately accounted for by payments AWB made. Though he regularly communicated with AWB, Defendant never made AWB aware that he was charging Levels Germany or Levels Nevada to support his luxury lifestyle.

37.    In addition, Defendant and Weishaupt visited Monaco together in July 2018. Defendant assured Weishaupt that the trip would be privately paid for and not paid through Levels Germany. But, in fact, Defendant chose to charge Levels Germany (and never reimburse it) for his use of a BMW 640 GT luxury car for €625.54 ($737.67).

38.    Throughout his tenure, Defendant instructed Braun on numerous occasions not to communicate with AWB, particularly with respect to the finances of either Levels Germany or Levels Nevada. Towards the end of his tenure in July 2018, Braun nonetheless provided detailed financial information directly to AWB, copying Defendant.

**Defendant Fires CFO Rather than Pay for Personal Expenses**

39.    Upon information and belief, as a direct result of Braun's admonitions to Defendant to keep personal and business expenses separate, and as a result of Braun's direct contact with AWB, Defendant fired Braun as CFO on August 27, 2018. Defendant justified his firing of Braun with respect to AWB by focusing AWB's attention on the proposed enterprise resource management software Braun hoped to implement, which, even in its most basic form, Defendant argued was excessively expensive.

40.    Defendant on a number of occasions expressed to AWB that he would hire a replacement CFO, but never did so. Instead, in mid-2018, Defendant promoted Matthew Gist ("Gist"), a Levels Nevada client service representative, to the position of accounting analyst. Gist had limited previous accounting experience.

41.    Despite the lack of experience, Gist also informed Defendant he needed to reimburse Levels Nevada or Levels Germany for Defendant's personal expenses. In fact, in the wake of Braun's departure, Defendant's expenditures for his personal benefit became more

14697-01/2644052

extravagant, requiring more and more infusions of capital from AWB and Levels Germany.

42.    In the Summer of 2018, Defendant informed AWB that he was in negotiations with Panda Express, the popular Chinese fast food restaurant chain. These negotiations would result in the provision of the Levels Service for Panda Express executives and VIPs for use in connection with private jet maintenance and refueling. Defendant promised that these negotiations would result in serious "turnover," *i.e.*, profit for the Levels companies. Defendant pointed to these negotiations with Andrew Cherng, Panda Express CEO, for months to secure continued funding by AWB of Levels Nevada. But while meetings took place between Panda Express and Levels Nevada, Levels Nevada only received certain monies through Citadel Aviation Investments, an entity related to the Cherng Family Trust, amounting to $500,000 to $600,000, on which Levels Nevada lost money through transaction expenses—and never made a profit.

43.    In March 2021, almost 3 years after the claimed negotiations, Levels received $350,000 to handle services for Citadel Aviation Investments. But with respect to this 2021 payment, Defendant never had any intention to use those funds to provide such services and simply claimed the amount to AWB as further monies received from Panda Express. Upon information and belief, the purpose was to continue to dupe AWB into providing funding for Levels Nevada.

44.    While Defendant was spending lavishly on himself at company expense, Defendant collected a salary of €72,000 per year from January 2017 to August 2020 from Levels Germany, totaling €228,000 (about $259,000). Starting in early 2019, Defendant also began drawing a U.S. salary of $160,000 per year[2], which increased to $250,000 per year in November 2019[3].  In total, over the course of the Levels business, Defendant grossed over $700,000 in salary.

45.    Levels Nevada accounting records illustrate the extent of Defendant's spending on himself at company expense (although the following is not an exhaustive illustration due to the

---

[2] For the purpose of the gross calculation at the end of this paragraph, $120,000 in total assuming 9 months' pay.

[3] For the purposes of the gross calculation at the end of this paragraph, approximately $354,000 in total assuming 17 months' pay.

accounting burden that compiling such an illustration would entail at this early stage of the litigation):

**GRAND TOTAL (paragraph 45): $451,922.27**

**Luxury Hotels, Casinos and Resorts:[4]**

| Location | Approximate Number of Transactions / Visits | Total Expenses |
|---|---|---|
| Baccarat, hotel and dining (New York) | 150 | $89,971.00 |
| Waldorf Astoria (primarily Las Vegas and Beverly Hills) | 110 | $52,468.43 |
| Four Seasons (various locations) | 15 | $12,737.21 |
| Bellagio (Las Vegas) | 25 | $5,251.41 |
| Wynn (Las Vegas) | 10 | $2,816.46 |

**Total: $163,244.51**

**Luxury Restaurants:**

| Location | Approximate Number of Transactions / Visits | Total Expenses |
|---|---|---|
| Cipriani (primarily Las Vegas and New York) | 90-100 | $25,218.54 |
| Madeo (Beverly Hills) | 10 | $10,490.04 |
| Palms Steakhouse (Las Vegas) | 20 | $7,229.39 |
| Il Mulino (New York) | 20 | $6,362.28 |
| Nobu (New York, Malibu and Las Vegas) | 10 | $4,944.96 |
| The Cosmopolitan Milos and Jaleo (Las Vegas) | 10 | $3,546.58 |
| Le Bilboquet (Sag Harbor, New York) | 5 | $2,847.61 |
| 21Club (New York) | 5 | $2,548.70 |
| Wally's Vinoteca (Beverly Hills) | 10 | $2,014.82 |

**Total: $65,202.92**

**Engagement and Wedding Rings:** Defendant purchased jewelry at Graff Diamonds in Las Vegas on February 14, 2019 coinciding with the approximate date of his marriage to Katherine Frey. According to the transaction records, the purchase totaled **$16,237.50**. At the time of the

---

[4] Assuming Defendant had not engaged in a scheme to defraud AWB from inception, AWB would have authorized a reasonable travel allowance for Defendant's purported business acquisition (or development) trips outside of Las Vegas.  Such allowance would reduce the total expenses set forth in the table "Luxury Hotels, Casinos and Resorts."

purchase, Defendant falsely represented to Gist that the purchase had been a gift by Weishaupt to the nuptial couple, so the memo line in the Quickbooks entry states "Weishaupt." A valuation certificate issued by Graff Diamonds confirms that the purchase was for an engagement ring (diamonds set in platinum) insurance value of $13,000 and a wedding band (18K white gold) insurance value of $2,000.

**High-End Fashion:**

| Location | Number of Transactions | Total Expenses |
|---|---|---|
| Bottega Veneta | 2 | $3,736.50 |
| Ermenegildo Zegna | 3 | $2,377.60 |
| Roberto Cavalli | 3[5] | $1,994.97 |
| Fendi | 2 | $897.36 |
| Jimmy Choo | 1 | $481.11 |

**Total: $9,487.54**

**Childcare Provided by Nicole Tolbert ("Tolbert"): $8,217.51**. This figure is according to Quickbooks for 2018 and 2019. However, it very likely underrepresents the expense item. In early 2020, Defendant moved Tolbert on to the Levels Nevada payroll, as he wrote to his executive assistant, Gail Allen ("Allen"), at the time, for himself "privately."

**Luxury Car Rentals:[6]**

| Location | Approximate Number of Transactions | Total Expenses |
|---|---|---|
| Sixt (Las Vegas, Los Angeles and Florida) | 20 | **$23,785.49** |

The entries for luxury car rentals stem from the time period 2018 to early 2019. After that, in response to the office joke making the rounds of "What is Jonas driving this week?", Defendant stopped renting luxury cars at *obvious* company expense. Nonetheless, AWB believes that the conduct persisted by other means, and this figure very likely underrepresents the expense item. The luxury cars included Porsches, Mercedes, and, on one or two occasions, exotic cars such as

---

[5] Defendant likely purchased a jacket and sandals at Roberto Cavalli on February 15, 2019 for $3,258.33 using his wife's Levels handle to no corporate purpose.
[6] Assuming Defendant had not engaged in a scheme to defraud AWB from inception, AWB would have authorized a reasonable car allowance for Defendant. Such allowance would reduce the total expenses set forth in the table "Luxury Car Rentals."

Ferraris.

**Home Entertainment:**

| Location | Approximate Number of Transactions | Total Expenses |
|----------|-----------------------------------|----------------|
| Cox Cable | 15 | $2,218.28 |
| iTunes | 100 | $1,274.13 |
| Hulu | 15 | $584.12 |

**Total: $4,076.53**

In addition to lavish spending on himself at company expense, Defendant repeatedly transferred Levels Nevada funds to and from his personal accounts (all amounts are good faith approximations). In 2021, the final five months of the Levels business, Defendant withdrew $131,573.01 but deposited a mere $34,618.55 – a difference of **$96,954.46** in his favor. In 2020, he withdrew $166,866.33 but deposited $123,104.36 – a difference of **$43,761.97** in his favor. In 2019, he withdrew $82,823.03 but deposited $47,086.43 – **$35,736.60** in his favor. In 2018, he withdrew $18,919.31 but deposited $24,834.44 – **$5,915.13** in the favor of Levels Nevada. And in 2017, he withdrew $0 but deposited $8,867.63 – **$8,867.63** in the favor of Levels Nevada. In total, a difference of **$161,670.27** in Defendant's favor.

46.     Defendant and his wife engaged in a similar course of conduct at Levels Germany, albeit on a smaller scale. Andreas Maspohl, who worked as an accountant for Levels Germany, kept a detailed record of their unpaid personal expenses. As of the date of the filing of this Complaint, Defendant owes Levels Germany at least **€26,342.83** ($30,169.31) for unreimbursed personal expenses, and Kathrine Frey owes Levels Germany at least **€5,919.56** ($6,413.39) for unreimbursed personal expenses.

47.     On August 24, 2020, Defendant formed Levels, Inc., a Nevada corporation, as the predecessor-in-interest of Levels Delaware. Defendant converted Levels, Inc. out of Nevada on October 23, 2020, moving the entity to Delaware and as a consequence of the conversion, formed Levels Delaware in Delaware.

48.     Effective September 1, 2020, Defendant transferred payroll to the new company (with the exception of Martin who stayed behind as the sole employee of Levels Nevada).  The transfer notwithstanding, Defendant caused Levels Nevada through Allen to pay him a duplicative

salary installment of **$14,583.39 gross** and $11,478.44 net on November 30, 2020. Defendant again caused Levels Nevada through Allen to pay him a duplicative salary installment of **$13,541.71 gross** and $10,750.72 net on December 23, 2020.

49.    In a hurried move in the venture's waning hours, Defendant caused $5,289.62 and $19,097.63 to be transferred to the bank account of Levels Nevada on April 15, 2021 and April 19, 2021, respectively, via Vantage (AWB suspects from Defendant's personal account(s)). Defendant booked the transfers as Levels Credits but never issued himself any credits. Upon information and belief, Defendant made this cash injection to avoid a cash flow crunch at Levels Nevada. On April 14, 2021, Levels Nevada had wired $39,950.00 to Levels Delaware, likely to fund payroll. The last large transfer of funds in the amount of $46,000.00 from Levels Germany to Levels Nevada before the venture failed arrived on April 20, 2021. Defendant returned $5,529.00 to himself on April 19, 2021 and more than $19,097.63 to himself in installments after April 26, 2021.

50.    As of late April 2021, Defendant had sufficient personal funds to make emergency cash injections. As of the approximate date of the filing of this Complaint, Defendant has sufficient personal funds to drive a 2015 Mercedes S65 AMG (12 cylinder) and a 2020 Harley Davidson CVO Limited motorcycle (and his wife drives a 2014 Porsche Cayenne Turbo S registered in his name)—despite, before suspending communications, representing to AWB and others time and again that he has no money to pay for anything.

### Crowdfund Financing Round and Defendant's Attempts to Abscond with the Value of the Levels Business

51.    Defendant's final attempt to perpetuate the Levels business and widen the class of his victims was to launch a crowdfund financing round. Defendant's rationale for forming Levels, Inc. and later converting it out to Delaware as Levels Delaware was to seek crowdfund financing. Unlike single large investors, crowdfund financing relies on many small investors. Such small investors would have had little incentive to look into the financial affairs of the Levels Companies and discover Defendant's self-dealing. To induce investors to invest in Levels Delaware, Defendant transferred all assets, including, in particular, intellectual property assets, to Levels

Delaware under an Asset Purchase Agreement, dated March 24, 2021.

52.     By an assignment agreement Defendant executed on the same day, Levels Germany assigned to Levels Nevada "any right, title and interest in and to all copyrights, copyright registrations, and copyrightable subject matter, including reproduction rights".

53.     By an assignment agreement between Levels Nevada and Levels Delaware, Levels Delaware received "copyrights and works of authorship, whether or not copyrightable, and all registrations, applications for registration, and renewals of any of the foregoing ('Copyrights')".

54.     The copyrights Levels Delaware received included Levels Germany's development of software related to the interests that users and potential users shared with Levels concerning user leisure activities, which Levels Germany finalized in 2020 in a work entitled Calling Card – Advertising Server. By utilizing this software, a potential return on investment could be calculated on advertising directed to a particular Levels user or group of Levels users. Moreover, this subject matter can be adapted for users beyond those that are part of the Levels subscribing network.

55.     In 2020, Defendant himself assisted with the development of that software and saved his work exclusively on a server located in his home, rather than on the servers and databases associated with Levels Germany.

56.     In June 2020, Defendant touted the Calling Card – Advertising Server to AWB as "alleine stellt schon einen grossen Wert dar" ("alone represents significant value") and caused the publication of a press release on September 22, 2020 based on the success of the Calling Card – Advertising Server entitled "LEVELS App Adds 35k Users Amid Pandemic".

57.     Defendant intended to entice crowdfund investment using the Calling Card – Advertising Server.

58.     Upon investigation, Levels Germany, Levels Nevada and Levels Delaware cannot locate Defendant's work related to Calling Card – Advertising Server.

59.     On May 12, 2021, Defendant formed the Nevada corporation, Phoenix Labs, Inc., naming himself as manager, one day after the Levels Companies became inactive as a result of

14697-01/2644052

- 16 -

Defendant's improper use of corporate funds.[7] Defendant listed one of his residence addresses at Vintage Canyon Street, Las Vegas, Nevada.

60.     Moreover, on June 3, 2021, Defendant caused Levels Nevada to file an amendment to its corporate annual report that lists Defendant personally as the "shareholder owner" of Levels Nevada. This filing was false as the sole shareholder owner of Levels Nevada is and always has been Levels Germany. In fact, on June 8, 2021, in the German insolvency application of Levels Germany to the Bankruptcy Court of Munich, Defendant made the opposite and later-in-time representation that Levels Germany is the sole shareholder of Levels Nevada.

61.     Defendant has therefore not only engaged in misconduct that has caused and will continue to cause irreparable harm to Levels Delaware, he has compounded his misconduct by engaging in acts geared to selling valuable assets that do not belong to him, and constitute the only means by which Levels Delaware may resume operations, and allow AWB to recoup a profitable investment.

62.     Such acts will continue until restrained by this Court.

63.     Plaintiffs have no adequate remedy at law.

## COUNT I

### Copyright Infringement (by Levels Delaware)

64.     Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

65.     Upon information and belief, Defendant has used, produced, reproduced, distributed, and publicly displayed the software known as Calling Card – Advertising Server created by Levels Germany for his own purposes in contravention of his duties as an officer of the Levels Companies.

66.     By assignment, Calling Card – Advertising Server belongs entirely to Levels Delaware.

---

[7] In the waning hours of the Levels business in late March through April 2021, Defendant took up residence in a condominium apartment in or around Miami, Florida, from which he hosted video conferences with coworkers (with the shimmering ocean in the background).

14697-01/2644052

67. Defendant's use and continued possession of Calling Card – Advertising Server is unauthorized and in contravention of Levels Delaware's rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Levels Delaware's exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works, and to publicly display its work.

68. Defendant's infringement has been undertaken willfully, knowingly, and with intent to financially gain from Levels Delaware's protected copyrighted work.

69. Accordingly, Defendant has directly and willfully infringed Levels Delaware's copyrighted work.

70. Calling Card – Advertising Server is duly registered with the United States Copyright Office under TX-9-006-315.

71. Because of Defendant's infringing acts, Levels Delaware is entitled to statutory or actual damages, immediate injunctive relief, including return of all copies of Calling Card – Advertising Server in the possession of Defendant, including transferees and anyone acting in concert with Defendant, and all other relief allowed under the Copyright Act.

72. Defendant's infringement has caused irreparable harm to Levels Delaware, for which it has no adequate remedy at law. Unless this Court orders the immediate return of Calling Card – Advertising Server and further restrains Defendant from infringing Levels Delaware's protected work in the future, the harm will continue. Accordingly, Levels Delaware is entitled to a permanent injunction.

## COUNT II

### Conversion (by Levels Delaware)

73. Plaintiffs hereby incorporate the preceding paragraphs of the Complaint as if fully set forth herein.

74. Defendant had full knowledge that Levels Delaware possessed exclusive rights in all copyrights developed by any of the Levels Companies, including Calling Card – Advertising Server.

75. By using and retaining such property, Defendant's acts were taken without Levels Delaware's permission or authority.

14697-01/2644052

76.    Defendant's acts interfered to the exclusion of Levels Delaware's rights as owner.

77.    Levels Delaware has been damaged by Defendant's conversion and is entitled to damages, and/or return of the Calling Card – Advertising Server, which damages shall be proven at an evidentiary hearing in this matter.

**COUNT III**

**Breach of Fiduciary Duty (by Levels Delaware)**

78.    Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

79.    As Chief Executive Officer of Levels Delaware, Defendant owed a fiduciary duty as an officer to use reasonable care and diligence, and act in good faith with respect to the assets of Levels Delaware. But as he did with each of the Levels Companies he was an executive of and owed such duty, he failed to do so, including by converting the assets of these companies, specifically Levels Delaware to his own use.

80.    As a direct result of Defendant's conduct, each of the Levels Companies has been denuded of its assets and left without the ability to restructure and earn monies from its investments.

81.    Defendant's breach of his fiduciary duty to Levels Delaware has caused Levels Delaware direct irreparable harm for which it has no adequate remedy at law. Unless this Court orders the immediate return of Calling Card – Advertising Server and further restrains Defendant from infringing Levels Delaware's protected work in the future, the harm will continue. Accordingly, Levels Delaware is entitled to a permanent injunction.

**COUNT IV**

**Fraud in the Inducement (by AWB)**

82.    Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

83.    Defendant falsely represented to AWB that he could not participate in the venture that was to become Levels unless his tax debts to Germany creditors, including, in particular, Germany tax authorities, were repaid in full. Weishaupt of AWB loaned Defendant €432,016

($467,782) by the end of 2017, which Defendant explained should be sufficient to cover the full amount of the debt. Defendant's representations were false. Defendant actually owed German creditors at least €856,524.91 ($957,861.80), which required Weishaupt to make further loans to Defendant.

84.    Defendant falsely represented to AWB that the venture would be a billion dollar enterprise while systematically raiding the venture for his own purposes and personal expenses. Once Levels Nevada had been established, Defendant acted to prevent Levels Germany or Levels Nevada from attracting other investors who would dilute Defendant's shares so long as AWB continued to fund his lavish lifestyle.

85.    Defendant made repeated requests for funding from AWB, which AWB honored, while actively concealing that he was spending such funding on personal expenses.

86.    Defendant also funneled monies out of Levels Nevada to other bank accounts AWB was not aware of, for Defendant's personal purposes at the expense of Levels Nevada.

87.    AWB relied on Defendant's representations to its detriment and was induced by Defendant's false representations and concealment of material facts to provide over $12 million to Levels Germany and ultimately to Levels Nevada and Levels Delaware to support Defendant's lifestyle. Had AWB known the truth of Defendant's conduct, AWB would not have invested any such proceeds.

88.    AWB has suffered substantial damages in an amount to be determined at the time of trial as a direct result of Defendant's conduct.

### COUNT V

### Piercing the Corporate Veil

89.    Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

90.    Defendant exercised complete dominion and control over Levels Germany and Levels Nevada, and complete business discretion over all aspects of Levels Germany, Levels Nevada and Levels Delaware management and operations.

14697-01/2644052

91. Defendant actively instructed others working for Defendant not to inform AWB of his expenditures of corporate monies for Defendant and for Defendant's spouse.

92. Defendant refused to reimburse Levels Germany and Levels Nevada for his personal use of corporate funds.

93. There was no effective oversight of Defendant's improper use of corporate funds at either Levels Germany, Levels Nevada and Levels Delaware, resulting in a failure to keep proper corporate records for either entity.

94. Defendant failed to follow normal and customary procedure with regard to either Levels Germany, Levels Nevada or Levels Delaware.

95. Defendant deliberately commingled corporate funds with his own funds resulting in inadequate capitalization of Levels Germany, Levels Nevada and ultimately Levels Delaware.

96. Considered as a whole, Defendant used Levels Germany, Levels Nevada and ultimately Levels Delaware as a vehicle to defraud others, in particular, AWB.

97. AWB suffered substantial damages from Defendant's fraudulent use of Levels Germany, Levels Nevada and Levels Delaware for his personal benefit.

98. The Court should pierce the corporate veil of Levels Germany, Levels Nevada and Levels Delaware and declare Defendant's transfer of corporate monies to hidden accounts fraudulent conveyances and allow payment to AWB of such funds, and other relief as just and appropriate.

## COUNT VI

### Unjust Enrichment

99. Plaintiffs hereby incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

100. AWB conferred upon Defendant certain valuable benefits.

101. Defendant appreciated and retained these benefits under circumstances where it would be unjust and inequitable for Defendant to retain these benefits.

102. As a direct and proximate result of Defendant's actions, AWB has suffered substantial damages in an amount to be determined at the time of trial.

103.    As a direct and proximate result of the aforesaid acts, it has become necessary for AWB to secure the services of an attorney, and AWB is entitled to recover fees and costs incurred herein as damages.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendant as follows:

A)    Pursuant to 17 U.S.C. § 502(a), preliminarily and then permanently enjoining and restraining Defendant, his agents, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from the distribution, offering for sale, sale, advertising and/or promotion in the United States of Calling Card – Advertising Server or any works, including text or images derived therefrom.

B)    Directing Defendant to immediately return or otherwise disable, and within 30 days of final judgment herein to assign to Levels Delaware any work relating to or in any way deriving from Calling Card – Advertising Server;

C)    Directing that any materials which infringe the Level Delaware copyright, including Calling Card – Advertising Server be impounded pursuant to 17 U.S.C. § 503(a);

D)    Directing that any products and materials belonging to Levels Delaware that Defendant transferred to third parties, as well any other articles that contain or embody the Levels Delaware copyright be destroyed pursuant to 17 U.S.C. § 503(b);

E)    Directing that Defendant be required to provide a full accounting to Levels Delaware for all profits derived from the use and display of Calling Card – Advertising Server and its production, reproduction, and preparation of derivative works based on Calling Card – Advertising Server in all media, from all sources, worldwide;

F)    Directing that Defendant be ordered to pay Levels Delaware all damages, including future damages, that Levels Delaware has sustained or will sustain as a result of the acts complained of herein, and that Levels Delaware be awarded any profits derived by Defendant as a result of said acts, or as determined by said accounting;

14697-01/2644052

G)      Directing that Defendant be ordered to pay Plaintiffs compensatory damages and punitive damages as a result of Defendant's deliberate and willful misconduct;

H)      Directing that any personal accounts belonging to Defendant be seized in order to preserve Defendant's ability to pay the judgment in this matter;

I)      Directing that Defendant be ordered to pay Plaintiffs pre-judgment and post-judgment interest on all applicable damages;

J)      Directing that Defendant be permanently enjoined from all further infringement of Calling Card – Advertising Server; and

K)      For such other or further relief as the Court may deem proper.

DATED this 28th day of September, 2021

**HOLLEY DRIGGS**

*/s/ James D. Boyle*
BRIAN W. BOSCHEE, ESQ.
Nevada Bar No. 07612
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

**WUERSCH & GERING, LLP**

Kevin Murphy (Pro Hac Vice Forthcoming)
Claudio A. Guler (Pro Hac Vice Forthcoming)
100 Wall Street, 10th Floor
New York, New York 10005

*Attorneys for Plaintiffs Levels Network, Inc. and AW Beteiligungs GmbH*

14697-01/2644052

- 23 -